No. 13880

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

SEYMOUR M. BOHRER,

Plaintiff and Respondent,

-vs-

STEVE CLARK, d/b/a STEVE CLARK CONSTRUCTION;
SHAEFER PLUMBING & SHEET METAL INC; LEVITT
CONSTRUCTION, a corporation; THE MAJESTIC
COMPANY; and MORGAN DRIVE AWAY, INC., a
Corporation,

Defendants and Appellants.

---

Appeal from: District Court of the Second Judicial District,
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellants:

Schulz, Davis and Warren, Dillon, Montana
Carl M. Davis argued, Dillon, Montana

For Respondent:

Poore, McKenzie, Roth, Robischon and Robinson, Butte, Montana
Urban L. Roth argued, butte, Montana

---

Submitted:  October 17, 1978

Decided: **DEC 1 5 1978**

Filed: **DEC 1 5 1978**

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs sued several defendants for damages based on the latters' negligence in causing a fire which destroyed plaintiffs' home and its contents. The jury returned a verdict for plaintiffs in the sum of $30,500 and judgment was entered thereon. Plaintiffs moved that the judgment be amended to award them the sum of $60,542.64 or in the alternative for a new trial on the issue of damages. The District Court ordered the judgment amended to award the homeowner $50,614.93 damages. One of the defendants appeals for reinstatement of the jury's damage award or for a new trial on all issues. Plaintiffs cross-appeal, seeking a further increase in the damage award to $60,542.64.

In the spring of 1973 plaintiff Seymour Bohrer, a native of New York who had never visited the west before, purchased a tract of land in a recreational subdivision near Ennis, Montana, for the purpose of constructing a vacation home thereon for his family.

After the purchase of the land, plaintiff asked the seller about building a house there. The seller informed him that he had a dealership arrangement with Levitt Construction Systems, Inc., a California based manufacturer of modular homes, and that several such homes were being constructed on other nearby homesites. Plaintiff arranged for his wife to go to California and meet with an interior decorator who the seller had indicated was handling the furnishing and equipping of several of the other homes. Mrs. Bohrer subsequently visited the factory where the homes were manufactured, selected a model she wanted, and together with the interior decorator began ordering the furniture, decorations and other items for the home.

Among the items that plaintiffs wanted included in their home was a fireplace, but Levitt Construction did not have any models including that feature. Levitt Construction therefore, at

plaintiffs' request, ordered a free-standing metal fireplace manufactured by the Majestic Company and placed it, still in its shipping carton, inside the modular home to be transported to Montana.

In early August, 1973, Morgan Drive Away Trucking Company delivered the Levitt home to the homesite. Several local firms in Ennis, Montana, were then hired to perform the work necessary to convert the package into a functional vacation home. Defendant Steve Clark, a construction contractor, was employed to lay a foundation for the unit, join the two halves of the home together, and otherwise perform the work necessary to "set up" the modular home on the building site. Clark also added an extra room and deck onto the house at plaintiff's request. Another local firm, Shaefer Plumbing & Sheet Metal, Inc., was employed by plaintiff to make repairs to plumbing which had been damaged in transit and to re-place the furnace with a larger model.

In mid-August, 1973, Mr. Bohrer visited the homesite to check on the progress of the construction. He noted that the fire-place was unattached and spoke with defendant Clark about install-ing it. Defendant informed him that a flue, a length of pipe to go through the ceiling, was needed and that someone with sheet metal knowledge and experience would be required to handle the job. After further discussion, plaintiff returned home with the understanding that between defendant Clark and Shaefer Plumbing & Sheet Metal, Inc., the installation of the fireplace would be completed.

The record is unclear whether plaintiff himself request-ed Shaefer Plumbing to order the flue or whether defendant Clark told Shaefer to order it for plaintiff. In any event, the flue arrived at Shaefer Plumbing in early September. Shortly there-after Shaefer Plumbing directed its employee, Jonathan Todd, to accompany defendant Clark to the homesite and install the flue.

Between the two of them the flue was installed and hooked up to the fireplace. The Majestic Company provides with each of its fireplaces a detailed set of installation instructions requiring that a protective noncombustible floor covering should be placed under the fireplace. Defendant Clark did not see any instructions with the fireplace. The fireplace was installed standing on the bare, unprotected carpet.

On December 24, 1973 plaintiffs arrived to spend Christmas in their new vacation home. Mr. and Mrs. Bohrer planned to spend a week in Montana and then go to California to spend New Year's and the following week. They therefore had brought with them a considerable wardrobe for themselves and their two children.

During the early evening after plaintiffs' arrival it developed that insufficient fuel had been ordered for the propane tanks to the furnace. Plaintiff contacted several neighbors, who in turn contacted the delivery service. Several of the neighbors came over to plaintiffs' home to make sure that the propane delivery was made. After the propane arrived at about 9:30 in the evening, the neighbors stayed to visit, make sure the furnace was operating, and have a few Christmas toasts to welcome plaintiffs to Montana. Plaintiffs do not drink, but did provide Christmas cheer for their guests.

At any rate, sometime prior to the arrival of the fuel truck, a fire was started in the fireplace. It was not a roaring blaze, and shortly before 11:30 p.m. when the guests were leaving, one of the neighbors, Walter Johnson, reached into the fireplace and with his bare hands stacked the remaining embers and cinders toward the back. Plaintiffs retired shortly thereafter. Just before she fell asleep, Mrs. Bohrer thought she smelled smoke. When Mr. Bohrer went to investigate, he found the wall behind the fireplace ablaze. He attempted to beat the flames out

with a blanket, but his efforts were fruitless. He evacuated his wife and children and they drove to a neighbor's for assistance. Before any firefighting efforts could be initiated, the modular home and all of its contents were destroyed by the fire.

A complaint was filed in the District Court of the Second Judicial District, Silver Bow County, on January 27, 1975. The complaint named as defendants Steve Clark, d/b/a Steve Clark Construction; Levitt Construction Systems, Inc. (the modular home manufacturer), and the Majestic Company (manufacturer of the fireplace). An amended complaint adding Shaefer Plumbing & Sheet Metal, Inc. as a party defendant was filed on February 27, 1975. A second amended complaint later added Morgan Drive Away as another defendant on the theory that the trucking company's negligence may have caused the loss of the installation instructions. The second amended complaint alleged that the negligence of one or all of the defendants had caused the destruction of plaintiffs' home and its contents.

The action was removed to federal court, subsequently remanded back to state court, and came on for trial by jury on January 24, 1977. By that time, the pleadings had been amended again to add a claim for personal injuries allegedly sustained by the Bohrer family in the fire.

During the presentation of plaintiffs' case, negotiations between plaintiffs and defendants Levitt Construction Inc., the Majestic Company, and Morgan Drive Away, Inc., resulted in an agreement whereby those defendants would pay plaintiffs $8,000 as a settlement, and in return plaintiffs would not resist their motions for dismissal and directed verdict after plaintiffs rested their case. Levitt, Majestic, and Morgan continued to participate in the trial, but pursuant to the agreement plaintiffs presented no evidence of negligence on their part. When plaintiffs rested,

- 5 -

the unopposed motions for dismissal of Levitt, Majestic and Morgan were granted. Thereafter, the court advised the jury that three of the defendants were no longer in the case and that they would be further instructed on that matter later in the trial. Defense counsel for the two remaining defendants, appellant Clark and Shaefer Plumbing, requested that the jury specifically be advised that the dismissed parties had settled for $8,000 and that the jury was to deduct that amount from any award they might make to plaintiffs. The trial court judge chose to withhold the details of the settlement from the jury and elected to make the necessary deduction himself after the jury had returned its verdict.

On January 28, 1977 the jury returned a special verdict finding both Clark and Shaeffer Plumbing guilty of negligence which caused the fire. The jury awarded no damages for personal injuries, but awarded $30,500 for property damage.

On February 8 plaintiffs moved to alter and amend the judgment or, in the alternative, for a new trial. The motion alleged that the jury verdict was contrary to the undisputed evidence at the trial. Plaintiffs contended that the evidence required an award of $60,542.64 and moved the court either to enter judgment in their favor for that sum or grant them a new trial on the sole issue of damages .

On March 11 the District Court entered an order amending the judgment to award plaintiff $50,614.93 damage. Both sides subsequently appealed; defendant Steve Clark seeks reinstatement of the original judgment or a new trial of the entire action, and plaintiffs seek a judgment increasing the damage award to $60,542.64.

The issues on appeal can be summarized in this manner:

(1) Was the District Court correct in increasing the damage award from $30,500 to $50,614.93?

(2) Can this Court on appeal increase a jury award of

damages?

(3) Was the giving and refusal of certain jury instructions reversible error?

(4) Sufficiency of the evidence to establish defendant's liability.

The first two issues both deal with the question of "additur". Issue number one raises the question from the perspective of the trial court's power to increase an award of damages, and issue number two poses the same inquiry as to this Court's power to increase the verdict and judgment.

Rule 59(g), M.R.Civ.P. provides for motions to alter or amend a judgment and states that such motions may be combined with a motion for new trial. In this case, plaintiffs made such a motion, requesting that the jury verdict be increased to $60,542.64, or in the alternative that a new trial be granted on the sole issue of damages. A similar motion was the subject of an appeal to this Court in State Highway Commission v. Schmidt (1964), 143 Mont. 505, 391 P.2d 692. In Schmidt, a motion for new trial had been made and the District Court, instead of granting a new trial outright, deemed the jury verdict inadequate. The court made a conditional order granting a new trial unless the losing party consented to the court's addition of some $7,800 to the verdict, in which event the motion for a new trial was denied. In Schmidt we held on appeal that Rule 59 does not give the trial court authority to add to the jury's verdict, conditionally or otherwise, if in the court's opinion it was inadequate. The Schmidt opinion unequivocally prohibits the practice of additur by the District Courts of Montana.

In a recent decision, however, this Court contradicted the holding in Schmidt by dictum. Ferguson v. Town Pump, Inc. (1978), ____Mont.____, 580 P.2d 915, 35 St.Rep. 824, involved a motion identical to the one plaintiffs made here; that is,

- 7 -

that the court either substitute a higher damage award or grant a new trial on the issue of damages. The motion was not one of the contested issues on appeal and need not have been addressed at all. Nonetheless, we remarked in passing that the rule followed in some jurisdictions, that it is within the constitutional power of the trial court to condition a denial of a new trial on the defendant's consent to an increase in the jury verdict, should be adopted in Montana. Town Pump, 580 P.2d at 919-920, 35 St.Rep. at 829. Re-examination of the issue under the closer scrutiny required by the context in which it arises here convinces us that our dictum in Town Pump was incorrect.

We recognize that there is a split of authority on this question. Having re-evaluated it in all its implications, however, we conclude that the reasoning articulated in Schmidt, states the better rule. Therefore, we expressly overrule that portion of Ferguson v. Town Pump, Inc. (1978), ____Mont.____, 580 P.2d 915, 35 St.Rep. 824, which adopted the rule that the District Court can add to a jury verdict. The rule in Montana in regard to additur is that announced in State Highway Commission v. Schmidt (1964), 143 Mont. 505, 391 P.2d 692. The trial court here erred when it increased the award to plaintiffs.

We should point out that Schmidt was the controlling law at the time the trial court made the additur here, as Town Pump had not yet been decided. The primary authority cited by the trial court in its memorandum accompanying the order increasing the verdict was Zook Brothers Construction Co. v. State of Montana (1976), 171 Mont. 64, 556 P.2d 911, 33 St.Rep. 809. "If the Court had any doubt as to its authority to alter and amend the judgment", the trial court here said in its memorandum, "such doubt is totally dissipated by the recent decision (in Zook Brothers)." In Zook Brothers, under the specific unusual circumstances there present, this Court itself raised an award of damages

made by a trial court. The fact that this Court on appeal added to a lower court's award under certain limited special conditions does not, however, automatically vest the power of additur in the District Courts. The trial court's reliance on Zook Brothers as authority for additur by a District Court was misplaced.

Reference to Zook Brothers brings us to the second issue on appeal; that is, this Court's power to increase an award of damages. Plaintiffs have cross-appealed for an order of this Court increasing the award from the $30,500 jury verdict to $60,542.64, which plaintiffs contend they are entitled to by virtue of undisputed evidence. Plaintiffs rely on Zook Brothers as authority for such an award by this Court. Zook Brothers, however, as we indicated above, involved a special set of limited circumstances. It was a case appealed from a trial to the court rather than to a jury, and a case in which we found the inadequacy of the award to be merely the result of an error in mathematical calculation.

Plaintiffs here argue that their damages are calculable with even greater mathematical certainty than in Zook Brothers. We have not undertaken to evaluate that contention because we hold that Zook Brothers should be strictly construed and that it is not controlling here. Zook Brothers, tried to the court, is not authority for us to add to the verdict here in a case tried to a jury, regardless of the presence or absence of the aspect of mathematical certitude.

We are aware that, as plaintiffs stated in their brief, the cases cited in Zook Brothers as authority for scaling upward the lower court's award are all jury cases. Nesbitt v. City of Butte (1945), 118 Mont. 84, 163 P.2d 251; Miller v. Emerson (1947), 120 Mont. 380, 186 P.2d 220; Klemens & Son v. Reber Plumbing and Heating Co. (1961), 139 Mont. 115, 360 P.2d 1005. We also note, however, that they were all cases where a jury verdict was reduced

- 9 -

as excessive; two of them because the amount of damages awarded was not supported by the evidence, and the third because the plaintiffs conceded that the amount was excessive and offered to settle at a lower figure. In such situations, the concern voiced and discussed at length in State Highway Commission v. Schmidt, supra, regarding interference with the right to trial by jury is, as pointed out in Schmidt, not a controlling factor. It is, however, again as pointed out in Schmidt, 143 Mont. at 511, 391 P.2d at 695, a primary consideration where an increase of a jury's award is involved.

We decline, therefore, to expand our holding in Zook Brothers to encompass the relief requested by plaintiffs. Zook Brothers is not general authority for appellate additur. Rather, the rule in Zook Brothers may be invoked only for an adjustment of an award of damages made by a District Court sitting without a jury, and only to correct an error ascertainable by mathematical calculation.

Having determined that the District Court erred when it added to the jury verdict, and that this is not a proper case for increase of the award by this Court, we are still left with the task of reaching a resolution of this controversy. Defendant has asked us either to order reinstatement of the original judgment on the jury verdict, or remand for a new trial of the entire action (on other specified grounds of error which we will address further below). Plaintiffs, on the other hand, sought in the District Court either additur to $60,542.64 or a new trial on the sole issue of damages, but on appeal have requested only that this Court amend the judgment upward to the sum they contend the evidence proves.

In actions involving injury to property, the proper amount of recovery is usually ascertainable by reference to fixed standards, and where the verdict in such an action appears to be inadequate, a new trial will be ordered. 58 Am Jur 2d New Trial §154.

- 10 -

Generally, the allowance or refusal of a motion for a new trial on the grounds of inadequate damages is a matter for the discretion of the District Court. 66 C.J.S. New Trial §201(6).

Rule 59(a), M.R.Civ.P., provides that "a new trial may be granted on all or part of the issues" in a case. Seibel v. Byers (1959), 136 Mont. 39, 344 P.2d 129, where we held that the trial court cannot grant a partial new trial limited to the issue of damages alone, was decided prior to the adoption of Rule 59 and is no longer controlling. The instances in which a new trial on the issue of damages alone may be proper are comparatively infrequent; nonetheless, the power of both trial and appellate courts to order such a limited trial is well recognized. "Where the court is convinced upon a review of the whole case that the jury have settled the issue as to responsibility fairly and upon sufficient evidence--so that disassociated from other questions it ought to stand as the final adjudication of the rights of the parties--and that there has been such error in the determination of damages as to require the setting aside of the verdict, a new trial as to damages alone may properly be ordered . . ." 58 Am Jur 2d New Trial §27.

It is apparent from the trial court's action on plaintiffs' motion to amend that the court was convinced the jury had reached a proper verdict on the issue of liability. Clearly, also, the trial court concluded that the jury's award was inadequate. The court stated in its order amending and altering judgment that the evidence would have supported summary judgment for plaintiffs for at least $41,364.62, yet the jury returned a verdict of only $30,500. Under these circumstances, an order granting a new trial limited to the issue of damages would have been within the court's discretion. Such an order, rather than amendment upward of the award, would have been a proper exercise of the court's discretion here. Since the District Court did not rule on the motion for new

trial, however, and since plaintiffs have not requested us on appeal to order a new trial on the sole issue of damages, we will not do so. Therefore, we order instead that the District Court's order amending and altering judgment is hereby vacated and the cause is remanded for a new trial, the scope of which shall be left to the District Court in the sound exercise of its discretionary powers.

Defendant urges that numerous errors were commited by the District Court in its choice of instructions to the jury. To avoid the possibility of a future appeal should the same instructions be used at the retrial, we will address those arguments in this opinion.

Six alleged errors are raised:

(a) Defendant objects to the court's refusal of his proposed instruction on contributory negligence. Defendant argues that plaintiffs may have been found contributorily negligent in purchasing a fireplace for a modular home without inquiring as to its safety or suitability, or for not obtaining or reading instructions on the installation before ordering it done.

It is true that as a general rule, issues of negligence and contributory negligence should be decided by the jury. Parrish v. Witt (1976), ____Mont.____, 555 P.2d 741, 33 St.Rep. 999 (citing earlier cases). However, there were facts present here which made refusal of the instruction proper. Plaintiffs had nothing to do with the actual installation of the fireplace. Plaintiffs had lived most of their lives in New York City apartments, were completely unfamiliar with the workings of fireplaces, and had retained the services of defendant in reliance on the expertise he held himself to possess. "Before it is proper to submit the question of contributory negligence to the jury, there must be evidence not only indicating negligence on the part of the plaintiff but also that such negligence contributed as a proximate

cause to the accident and resulting injuries." Stephens v.
Brown (1972), 160 Mont. 453, 503 P.2d 667; see also, Grabs
v. Missoula Cartage (1976), 169 Mont. 216, 545 P.2d 1079. Under
Montana law, "[M]ere knowledge of the existence of an offending
instrumentality . . . is not sufficient in itself to constitute
contributory negligence; but in addition the person so using it
must have appreciated, or must have had the opportunity to apprec-
iate, danger from its use. . . ." Zimmer v. California Co. (D.
Mont. 1959), 174 F.Supp. 757, 764. We find no error in refusing
this instruction under the evidence at the trial.

(b) Defendant objects to the court's refusal of his pro-
posed instruction on damages. Defendant offered an instruction in
language taken from Spackman v. Ralph M. Parsons Co. (1966), 147
Mont. 500, 414 P.2d 918, which provided alternative measures of
damages for property totally destroyed and property on which re-
pair is possible. The court instead gave an instruction in the
language of section 17-401, R.C.M. 1947, which states the measure
of damages for breach of an obligation not arising from contract.
We defer to the discretion of the District Court in its choice of
instructions; we refuse to predicate error on the use of a statu-
torily approved formula.

(c) Defendant complains of the District Court's refusal
of his offered instructions on imputed negligence, alleging that
certain of plaintiffs' agents had acted negligently and that
their negligence amounts through agency principles to negligence
of the plaintiffs themselves. The same rules as stated in our
discussion of the contributory negligence issue apply to any
alleged negligence on the part of plaintiffs' agents which might
be imputed to plaintiffs. There was no evidence establishing that
the acts of any of plaintiffs' agents other than defendant Clark
and Shaefer Plumbing were a proximate cause of the fire. Both
defendant Clark and Shaefer Plumbing admitted in their testimony

- 13 -

at trial that it was their duty to insure that plaintiffs' home would not be damaged by the fireplace they installed. No such duty was established as to any of the other parties involved.

Defendant Clark argues that the negligence of Shaefer Plumbing should be imputed to plaintiffs. If so, then couldn't Shaefer Plumbing argue that Clark's negligence is likewise imputed to plaintiffs, leaving plaintiffs no remedy against either? This is a case of joint and several liability. We find no error in the refusal of the imputed negligence instructions.

(d) Defendant objects to the court's instruction that the cause of the fire was the defectively installed fireplace. Defendant argues that this was a question of fact for the jury to determine. There is, however, no evidence in the record that the fire originated from any other source. An instruction is not objectionable because it assumes an uncontroverted fact, or one which is admitted or conclusively shown by the evidence. Hogan v. Shuart (1892), 11 Mont. 498, 28 P. 969; Frederick v. Hale (1910), 42 Mont. 153, 112 P. 70; 75 Am Jur 2d Trial §679.

Defendant argues that the instruction that the fireplace was the cause of the fire was inconsistent and contradictory in that the court also instructed the jurors that they were not bound by the opinion of two expert witnesses who testified on that issue. We agree that the giving of conflicting instructions upon a material issue is reversible error. Skelton v. Great Northern Ry. Co. (1940), 110 Mont. 257, 100 P.2d 929. However, the instruction on the weight to be accorded expert testimony does not conflict with the uncontroverted fact that the fireplace caused the fire that destroyed plaintiffs' home.

(e) Defendant argues that he was only following a floor plan supplied by plaintiffs when he installed the fireplace. He objects to the court's refusal of his instruction that damages

- 14 -

resulting from defective or insufficient plans furnished by an owner cannot be blamed on a construction contractor. Leigland v. McGaffick (1959), 135 Mont. 188, 338 P.2d 1037. We conclude that the District Court properly refused the instruction in that the floor plan furnished by plaintiffs, showing only where the fireplace was to be located in relation to other objects in the room, cannot be equated with the "plans and/or specifications" contemplated by the rule in McGaffick.

(f) Defendant alleges error in the District Court's failure to instruct the jury more thoroughly in regard to the dismissal of the defendants who had settled with plaintiffs. There is an even division of authority as to whether the terms of a settlement should be revealed to the jury and whether the jury or the court itself should make the necessary deduction from any award of damages. Annot: 94 ALR2d 352. In our opinion, this is a matter that should be left to the discretion of the trial court. We agree with those jurisdictions holding that the trial court's decision on the matter should not be disturbed unless it clearly appears that a fair trial has been jeopardized. Cf. Degen v. Bayman (1972), 200 N.W.2d 134. We do not find that to be the case here.

We now turn to the final issue for review; the sufficiency of the evidence to support a finding of liability on the part of defendant Clark. Defendant contends that there was no contract between him and plaintiffs for installation of the fireplace and no duty upon him in that regard. The only charges made to plaintiffs relating to the fireplace installation, he argues, were made by Shaefer Plumbing. Therefore, he concludes, the jury's finding against him was not supported by the evidence and the District Court should have granted his motion to dismiss at the close of plaintiffs' case-in-chief.

Evidence in support of a verdict is not insufficient if it is substantial. State Highway Commission v. Arms (1974), 163 Mont. 487, 518 P.2d 35. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". Webb v. Celebrezze (D.Mont. 1964), 226 F.Supp. 394, 395. Defendant Clark was the individual generally in charge of "setting up" plaintiffs' mobile home. Testimony established that he participated in the negligent installation of the fireplace, regardless of whether or not the performance of such work was itemized in a bill for his services. "Negligence is ordinarily a jury question and it is only where the facts admit of but one conclusion that it becomes a matter of law." D'Hoodge v. McCann (1968), 151 Mont. 353, 361, 443 P.2d 747. There was no error here in denying defendant's motion for directed verdict.

The order of the District Court amending the judgment to award plaintiffs the sum of $50,614.93 is vacated together with the original judgment. The cause is remanded for a new trial consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices